ALLAN THOMPSON,

*vs.*

JOSEPH LYNAM.

*New Castle, March T.* 1819.

A purchaser of land at Sheriff's sale, the sale being not yet returned nor a legal title acquired, has nevertheless a remedy by injunction to stay waste of the premises purchased.

PETITION FOR AN INJUNCTION.—This was an application *ex parte*, in vacation, for an injunction to stay waste, founded upon a petition of Allan Thompson, setting forth, that certain lands had been sold by the Sheriff of New Castle County, under a writ of *Levari Facias*, No. 8, to March T. 1819, in execution of a judgment in *Scire Facias* on a mortgage recovered in the Supreme Court for Kent county, by George Latimer and others, against William Pryce; that the premises were purchased by the petitioner on the 16th of January, 1819, at the Sheriff's sale; and that the premises were in the possession of several persons, as terre tenants, part thereof being held by Joseph Lynam. The petition further proceeded to set forth as follows, viz;
" that previous to the recovery of the judgment upon the
" mortgage, and while the proceedings under the *Scire*
" *Facias* were pending, the persons in possession of the said
" premises, knowing that there was no substantial defence
" to the said proceedings, commenced cutting down the tim-
" ber and carrying it off, to the great injury of the prop-
" erty, to prevent which a writ of estrepement issued from
" the Supreme Court to restrain waste of the premises dur-
" ing the pendency of said proceedings. That since the sale
" of the said premises, the said Joseph Lynam has com-
" menced cutting down the timber and carrying it off from
" the said premises; that in consequence of the ravages
" committed as aforesaid, previous to the judgment, the
" timber has become very scarce upon the said land, and that
" the waste now being committed by the said Joseph Lynam
" is on this account of more serious injury. That the
" said Joseph Lynam has cut off twenty of the finest timber
" trees, and that he threatens to go on ( as the petitioner
" is informed) cutting down and carrying off more. That
" in addition to this he is pulling down the fences, and
" threatens to carry off the manure to another farm ad-
" jacent, and has threatened to continue to cut timber and
" use the premises as he pleases." *Prayer*, for an injunc-
9

tion to restrain from the cutting or felling of any wood or timber, and from the carrying away of what has already been felled or cut, and to restrain from the commission of any further waste, &c.

The return day of the writ under which the premises had been sold to the petitioner not having arrived, the sale had not been confirmed nor any conveyance made to the petitioner at the time of this application.

The petition was presented on the 26th of March, 1819. The Chancellor having held it under consideration until the 29th of March, awarded the injunction, assigning in his notes of the case, the following reasons :

It is a rule that a party applying for a writ of injunction to stay waste should have, or establish, a title to the place in which the waste is committed, before an injunction can be issued ; and in his affidavit the particular title should be set out. It is not sufficient to allege merely that the party is entitled to a fee simple estate. 2 *Atk.* 391 : 4 *Burr* 2400 : 1 *Brown Ch. Rep.* 57. But this rule has not been so tenaciously adhered to, that when the party could have no other remedy, the court would not afford this. In 2 *Brown Ch. Rep.* 552, *Hoskins vs. Featherstone,* a writ of injunction was granted to stay waste against the widow of a rector, at the suit of the patroness, during the vacancy, although, during the vacancy, the fee-simple was in abeyance. Here, though the plaintiff had no title, yet the right of patronage was a sufficient ground for the writ, and the want of other remedy.

In this case the plaintiff has had no conveyance of the land (none appears) from the sheriff, and the term has not arrived at which the sheriff can make return of the sale ; yet the plaintiff, supposing the sale to be fair and regular, has at least an equitable title to the land, and perhaps something more. Allan Thompson is liable to the sheriff for the purchase money, and after his return

the sheriff can support an action for it. This has been decided in the High Court of Errors and Appeals in the case of *Davis vs. Manlove*, merely upon the sheriff's return, without an agreement in writing signed by Davis, the purchaser, and the sheriff. As Thompson is thus liable, he seems to be peculiarly entitled to the aid of this court until he can be prepared for a remedy at law. If he cannot prevent waste by a writ of injunction, he may receive a wrong without a remedy. What other remedy could he have?

There is another reason for ordering the writ. It appears from the affidavit that the premises in question had been mortgaged. The mortgagees sued a writ of *Scire Facias*, and recovered judgment in the Supreme Court, at November Term, 1818. Joseph Lynam was a party to that proceeding, and consequently was bound by it; and the writ of *Levari Facias* was taken out against him and the other defendants in that suit. Lynam was a terre tenant, and held, it is presumed, under the mortgagor. He, at any rate, was bound by the judgment. When land is mortgaged and the mortgagor is in possession, an injunction may be issued to stay waste, because the whole land is a security for the debt. 3 *Atk*. 210, 723. So, when there is an arrear of charge upon the real estate, an injunction shall go to prevent cutting timber upon the premises charged. 2 *Eq. Cas. Ab.* 758. *p.* 5. This is perfectly correct and just; and it is equally right, that until the whole proceeding is completed, that is, until the sale, return and conveyance is completed, all persons coming in under the mortgage, or claiming or being entitled to the land under any process of law grounded on the mortgage, should be secured against the destruction of the property, as well as the mortgagee. If, between the sale and return, the mortgagor, or any person in possession under him, may destroy the land, the security will be equally lessened as if such destruction were committed before any proceeding

on the mortgage; for no person would be weak enough to throw his money away on land which he could not protect, and thus the sale might be defeated, and the value of the land diminished by the insecurity of the purchaser.

After the award and service of the injunction, no further proceedings in the cause appear to have been taken.