ENNIS

*v.*

SMITH, ET AL.

(Court of Chancery of Delaware. Feb. 28, 1911.)

*James H. Hughes,* for complainant. *Richard R. Kenney,* for defendant Smith. *Thomas C. Frame, Jr.,* for defendant Hurley.

THE CHANCELLOR. ■ The case is before the Chancellor on a petition of a mortgagee against his mortgagor and another to prevent an impairment of the security by the cutting of timber on the mortgaged premises. By special statute, upon petition of a mortgagee, the Chancellor may award an injunction to restrain waste upon the mortgaged premises. This act is only an affirmance of a jurisdiction theretofore possessed by the Court of Chancery, the form of the application for the remedy being by petition instead of a bill, though the proceedings in the suit subsequent to the bill follow as though the suit had been instituted by bill instead of petition.

By the petition it appears that the mortgage of the petitioner is overdue, by reason of the failure to pay an installment of principal due before the cutting of the timber; and that the mortgagor, Smith, and one Hurley were cutting and removing timber, which acts would very seriously impair the security of the mortgage, and praying for an injunction against further cutting and against sawing, or removing any timber cut. Upon filing the petition a restraining order was, on January 21, 1911, granted, restraining the cutting and removing timber until the further order of the Chancellor, and a rule issued to defendants to show cause why a preliminary injunction should not be issued, returnable on January 28, 1911. The rule was continued by request of counsel until February 21, 1911, and was then heard on petition, answer of Hurley and affidavits. The defendant, Smith, the mortgagor, did not appear at the hearing of the rule, so that as to him the rule could be made absolute and a preliminary injunction awarded. But Hurley has, by his answer, sworn to, supported by an affidavit of Smith, the mortgagor, alleged that he cut the timber under a verbal contract with Smith, whereby Hurley should also saw the timber into lumber, receiving one-half of the lumber and all the slab wood, Smith to receive the other one-half of the timber; that he, Hurley, knew of the mortgage and was informed by Smith that Ennis, the petitioner,

had consented to the cutting of the timber; and that about sixty trees had been cut, ten of which had been sawed into lumber, and part of the lumber and all the rest of the timber cut was still on the land. Hurley does not object to a permanent injunction against future cutting, but asks that neither it or any temporary order restrain the sawing or removal of the other trees cut before the restraining order was served, or the removal of the lumber already sawed and on the mortgaged premises. By this affidavit Smith, the mortgagor, says that Ennis, the petitioner, mortgagee, consented that some of the timber be cut, part of the lumber to be used in repairs and part sold and the proceeds paid to the mortgagee on account of interest on the mortgage debt. That Hurley was told of the consent of Ennis.

Ennis, by affidavit, denied consent to the cutting and removal of any timber, averred insolvency of Smith and Hurley, and that there were chattel mortgages and execution levies against Smith's personal property in excess of its value. The only other affidavit is that of George Ennis, who states the further fact that the removal of the timber already cut will seriously impair the security of the mortgage of Ennis.

At the hearing of the rule, the solicitor for Hurley asked leave to prove the solvency of Hurley, if the Chancellor should consider the statement in an affidavit of the insolvency of Hurley to be material.

It now stands, then, that the petitioner is entitled to a preliminary injunction to stay further cutting, the sole question being whether the injunction shall also prevent the sawing or removal by Hurley of other trees cut before the filing of the petition, or the lumber and slab boards into which they have been, or shall be, converted by the labor of Hurley expended thereon.

In Delaware the jurisdiction of the Court of Chancery to restrain waste is established and frequently exercised. It is also settled, that when the court takes jurisdiction to restrain waste, it will do complete justice by decreeing an accounting and satisfaction for the waste committed. *Fleming's Trustee v. Collins, 2 Del.Ch.* 230, where the waste was committed by a tenant for years and the complainant was the landlord. A lien holder has been allowed an injunction to stay

future waste which would impair his security, and in Delaware this remedy has been given to a mortgagee, *Thompson v. Lynam*, 1 *Del.Ch.* 64, and to a judgment creditor, *Hughlett v. Harris*, 1 *Del.Ch.* 349, 12 Am. Dec. 104. The rule has also been extended in behalf of a purchaser of land at sheriff's sale, even before the return and confirmation of the sale. *Thompson v. Lynam, supra.*

The rights of the remainderman respecting timber trees cut wastefully by a life tenant, or tenant for years, have also been adjudicated elsewhere and in Delaware the theory that when so severed they belong to the remainderman, and in Delaware the remainderman may maintain trover for the value of the timber cut, and the value thereof will be ascertained even after the life tenant had enhanced the value thereof by adding his labor thereto, as by sawing the logs into boards, which were still in the hands of the life tenant. *Harris v. Goslin*, 3 *Har.* 340.

But the rights of a mortgagee before foreclosure, or as here even before suit brought to foreclose the mortgage, to restrain the removal of timber cut and still on the mortgaged premises, where there are allegations and some evidence that the removal thereof would impair the security for the mortgage debt, and where there is evidence that the mortgagor, and perhaps the person who cut the timber under contract with the mortgagor, were insolvent, have not been definitely and clearly settled in this state, or elsewhere, so far as I can determine in the time available to me for examination and consideration of the law. It may be a necessary consequence of the decision of *Hughlett v. Harris, supra,* that the mortgagee has no right to such relief, though in that case it did not appear that the judgment debtor was insolvent. In other jurisdictions the decisions are conflicting. Without referring to others, it was held in the case of *Bank of Chenango v. Cox*, 26 *N.J.Eq.* 452, as follows:

"Where the person against whom relief must be sought for the waste committed, is insolvent, or where no redress can be obtained at law, or in equity, if the removal be permitted, the injunction may be granted. And so, too, where there is fraud. But, where, as in the case before me, there is no allegation of insolvency, nor any evidence of fraud, nor any circumstance leading to the conclusion that no

redress at law, or in equity, can be had, unless it be by injunction, and an account is prayed in the bill from the person who has committed the waste, the injunction should be granted."

In that case the facts do not appear, except that it was a proceeding to foreclose a mortgage and the decision was made on a motion to modify an injunction so as to confine it to future waste.

In the case at bar, in addition to allegations and evidence of the insolvency of the mortgagor, there is some evidence that the removal of the trees cut prior to the service of the restraining order, would impair the security of the mortgagee for his debt. In view of the uncertainty as to the material facts and as to the law applicable thereto, I will, without expressing an opinion on the merits, grant a preliminary injunction as prayed for, including a prohibition of the removal of the trees already cut, upon the complainant giving a bond with sufficient surety, which will protect Hurley in his rights if he be successful in his contention that the injunction should not have covered the cut timber, or the lumber, now on the premises.